IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM J. BENTON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | No. 1:04CV00106 |
| | * | |
| MICHAEL MUNDY, Deputy Sheriff, | * | |
| in His Individual and His Official Capacity; | * | |
| DAN JOHNSON, former Sheriff, in His | * | |
| Individual Capacity; KEITH BOWERS, | * | |
| Sheriff, in His Official Capacity; and | * | |
| JOHN DOES ##1-3, Deputy Sheriffs, in | * | |
| Their Individual and their Official Capacities; | * | |
| | * | |
| Defendants. | * | |

**Memorandum Opinion and Order**

This action is brought pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1991. Plaintiff William J. Benton alleges that on March 23, 2002, deputies with the Independence County Sheriff's Office arrested him without probable cause and pursuant to an unconstitutional policy. The matter is before the Court on defendants' motion for summary judgment to which plaintiff has responded. After careful review of the motion, response, briefs, statements of undisputed facts, and exhibits, the Court finds the motion should be granted.

**Background**

According to defendants, on March 23, 2002, Deputy Rob Leonard of the Independence County Sheriff's Department received a call from dispatch advising that someone had called dispatch and laid down the telephone and that dispatch could hear someone screaming and yelling in the background. Then the telephone was hung up. The dispatcher cross-referenced the phone

number and it came back as plaintiff's residence. Deputies Leonard and Wright arrived at plaintiff's residence at the same time as Deputy Duane Grice. When Leonard arrived, Lori Benton ("Benton"), plaintiff's wife, met him at the door of the residence. When Leonard asked Benton if everything was okay, she asked him to come inside. Upon entering the house, Leonard saw plaintiff come around the corner, holding his head; blood was running down his face. When Leonard asked him what had happened, plaintiff said nothing. When Leonard asked Benton what had happened, she said she had hit plaintiff over the head with a belt buckle. Deputy Leonard called for EMS and for a domestic violence officer. When Deputy Rich Callahan arrived at the scene around 11:15 p.m., Leonard turned the situation over to him. After Callahan and EMS arrived, Grice left the scene.

Deputy Callahan states that when he walked into the residence, he saw plaintiff bleeding from the head; he also said plaintiff appeared to be intoxicated. Plaintiff denies he was intoxicated. EMS was on the scene treating plaintiff, and Callahan spoke with Benton about what had happened. Deputy Callahan called separate defendant Mundy around 11:55 p.m. and advised him that there had been a "domestic" between Benton and plaintiff and that plaintiff was at the emergency room. After contacting Chief Deputy Hilburn, Mundy went to the residence where he met Callahan and Benton. After speaking with Benton and seeing marks on Benton's arm, Mundy went to the emergency room and met with plaintiff. Defendant Mundy said he told plaintiff, who was being released, that he was under arrest for Domestic Battering in the Third Degree. He said plaintiff was cooperative and smelled heavily of intoxicants. Once at the jail, Callahan wrote plaintiff a citation for domestic battery, read him his rights, and let plaintiff write a statement. Plaintiff initialed and signed a Statement of Rights form at 1:31 a.m. on March 24, 2002, which was witnessed by Callahan.

On March 24, 2002, at 7:30 a.m., plaintiff was released on his own recognizance. On April 3, 2002, Benton filed an affidavit indicating that she did not want to prosecute plaintiff for domestic battering. The municipal court of Independence County dismissed the charges against plaintiff and sealed the record.

Plaintiff filed a complaint in federal court on December 17, 2004, asserting that the Independence County Sheriff's Office has a policy that provides that in domestic abuse cases, the person about whom the sheriff's office receives a call will be the party arrested even if that party is the only one showing signs of physical injury. Plaintiff contends he was arrested pursuant to this policy and that his arrest was without probable cause. He seeks compensatory and punitive damages as well as injunctive relief. In their motion for summary judgment, defendants argue there was no personal involvement by separate defendant Dan Johnson, the former sheriff; there is no evidence of an unconstitutional arrest policy; there was probable cause for the arrest; and that defendant Mundy is entitled to qualified immunity.

**Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986). The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587 (citations omitted). Further, summary judgment is particularly appropriate where an unresolved issue is primarily legal, rather than factual. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

## Discussion

Defendants argue plaintiff's claims against former Independence County Sheriff Dan Johnson, who is sued in this individual capacity, should be dismissed because there is no evidence of any personal involvement by Johnson in any of the allegations. Plaintiff admits Johnson had no personal involvement[1] and, therefore, the Court finds the motion for summary judgment should be granted as to the claims against Johnson.

Plaintiff sues separate defendants Bowers and Mundy in their official capacities, alleging the County has an unconstitutional policy that provides for the arrest of the person about whom a domestic violence call is made to the sheriff, notwithstanding that the arrested party is the only one with visible signs of injury. Defendants assert in their motion for summary judgment that plaintiff

---

[1] *See* Pl's. Resp. Mot. Summ. J., ¶ 4.

has no evidence of such a policy, pattern, or practice. Plaintiff agrees that the claims against Bowers and the claim against Mundy in his official capacity should be dismissed.[2]

The only remaining claim is whether there was probable cause for plaintiff's arrest. Probable cause is to be determined upon the objective facts available to the officer at the time of the arrest, and exists if "the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense at the time of the arrest." *Smithson v. Aldrich,* 235 F.3d 1058, 1062 (8th Cir. 2000) ( internal quotations omitted).

When Mundy arrived at the residence, plaintiff had been taken to the hospital. Officer Mundy testified he spoke with Callahan, who told him plaintiff had been bleeding from the head. Officer Callahan did not mention any other injuries on plaintiff. Officer Mundy said he inspected Benton for injuries and saw marks on her arm. He said the marks appeared to have been made by someone twisting her arm. He said Benton's hair was disheveled and she was crying. Officer Mundy testified that Benton told him she and plaintiff had gotten into an argument over their sons and that plaintiff was intoxicated. She said she tried to call 911 and plaintiff took the telephone away from her, grabbed her and shoved her, and she finally hit him with the belt. Officer Mundy testified that based on Benton's demeanor, the marks on her arm, the fact that the telephone was laying on the floor and the telephone downstairs was unplugged, and the fact that Benton and Callahan both told him they thought plaintiff was intoxicated, he made the determination that plaintiff was the aggressor and would be arrested. When he got to the hospital, Mundy placed plaintiff under arrest. Officer Mundy said he had made up his mind to arrest plaintiff before he got to the hospital and did not inspect plaintiff for any other injuries. In addition to Mundy's testimony, defendants submit

---

[2]*See* Pl's. Br. in Supp. of Resp. to Mot. Summ. J. at 2.

statements of Deputies Leonard, Grice, Callahan, and Mundy's, Narrative/Supplements, which defendants state are part of the investigative file kept in the normal course of business.

In response to defendants' motion for summary judgment, plaintiff argues that the motion is not supported by proper affidavits, contending that the Narrative/Supplements are not admissible[3] and that plaintiff's testimony shows there is a genuine issue of material fact as to whether there was probable cause to arrest him. According to plaintiff's testimony, he told the officers on the scene that he had been attacked by his wife and that he had only acted in self-defense. He argues that, considering these facts as well as the fact that he is the one who had to be taken to the hospital, no reasonable officer could conclude that he had committed a crime at the residence.

The Court finds, based upon his deposition testimony, that Mundy had probable cause to arrest plaintiff for domestic battery. The fact that he did not question plaintiff as to his version of the events and that Benton declined to provide Mundy with a written statement does not render plaintiff's arrest unconstitutional.

---

[3] Plaintiff references 31 A.L.R.Fed. 457 § 10, and cited cases, which provide:

The so-called 'business records' exception to the hearsay rule, as embodied in former 28 U.S.C.A. § 1732(a) and in the new Federal Rule of Evidence § 803(6), excepts the record or report itself, so that the record may be admitted in evidence even though the maker of the record is unavailable to testify. It is generally recognized that the business records exception does not make admissible anything contained in the record or report which would not be admissible if testified to by the maker of the record or report. Consequently, in the following cases it was held that the content of a police report which was not the result of the reporting officer's own observations, but was the product of statements made to the officer by third persons, could not be admitted into evidence under the business records exception to the hearsay rule unless the third party making the statement was under a business duty to do so.

**Conclusion**

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [docket entry11] should be and is hereby granted. Plaintiff's claims are dismissed. Judgment will be entered accordingly.

DATED this 14th day of March 2006.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE